[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff whose maiden name was Baron, and the defendant intermarried on November 8, 1975 in Bridgeport, Connecticut.
The parties have resided continually in Connecticut for at least one year next before the date of this complaint.
There are two minor children born to the plaintiff wife, issue of this marriage.
Jillian — date of birth — 7/3/77
Christopher — date of birth — 11/15/85
No other children have been born to the wife, and none have been adopted.
Neither plaintiff nor defendant is or has been a recipient of financial aid from the state of Connecticut, any sister state, or the federal government.
Between November 8, 1975 and the date of this complaint, the marriage has broken down.
The trial began on December 4, 1990, and concluded on January 25, 1991 after final arguments.
The court takes jurisdiction of this matter and finds that the marriage of these parties is broken down irretrievably, and that there is no reasonable hope of reconciliation, after having heard, and observed the parties and witnesses.
The court finds the defendant husband to be a forty-four year old, healthy, quiet man, who works at his profession and likes it. He also teaches one night a week at a local college and is extremely home oriented. He loves his children, wants to have their custody and desires to raise them.
His "drinking" as testified to by the plaintiff was found to consist of beer, imbibed at home, usually while he was engaged in a household repair or task. CT Page 1045
He is said to have good rapport with his parents and his wife's sister and her family. Defendant is a graduate engineer who also has an M.B.A.
The court finds the plaintiff wife to be a drawn intense young woman allegedly some seven or eight years younger than the defendant, with a thyroid problem.
Apparently, during the first twelve years of this marriage, it went along smoothly or at least appeared to do so. There were the usual ups and downs as testified to by the plaintiff. The defendant being out of work several times she testified, through no fault of his, caused her to be distressed, and she felt that put a strain on her. They were supported during these periods by savings, and the defendant's family.
She comes from an admitted broken home and has not seen or wanted to see her father for many years.
The plaintiff testified that although neither child, was planned, she loves them both. She seems to lean more toward her daughter Jillian, possibly because she feels the defendant leans more toward their son, Christopher. Within the last three years, admittedly, the plaintiff apparently began to seek the attentions of other men, and eventually formed a relationship with a co-worker then separated from his family, who has or had, an alcohol and substance abuse problem. This adulterous union with regular sexual intercourse at various places caused the plaintiff to become pregnant. She sought and received an abortion, and after this was over, became deeply depressed when her paramour failed to give her the care, attention and support she desired. She then admitted herself to a hospital where she stayed for period of six weeks before she was discharged. The plaintiff created the impression that there were other extramarital affairs involving her, and that she does not think its wrong for a married separated person to participate in them.
The plaintiff testified that she had taken, or had at least three men to visit her in their home and that Jillian had seen at least two of them, and referred to them as "Mommy's dates". This allegedly very bright child was then 12 or 13 years old.
The plaintiff admittedly bounces small checks and visits local bars regularly.
The plaintiff contends the tension in their household caused by the divorce action, that she does not believe is due to her lifestyle, flows to Jillian and then to Christopher. CT Page 1046
By her own admission the plaintiff attempted suicide and told defendant at that time to "pick up Christopher" as she was afraid, and, "didn't known what might happen."
Although the plaintiff professes to have a great love for the two children the defendant contends that its noticeable that she does not spend all the time she can with them.
The plaintiff admittedly does not speak to many members of her family, and/or her wedding friends.
The court finds the plaintiff to be a disturbed, weak, undependable, unreliable and nervous woman, who tends to blame all of her problems including her exercise of poor judgment adultery and depression on her husband the defendant.
Jillian is allegedly a normal and intelligent young girl of thirteen who has said at times that she prefers to live with her mother, but has never said this to her father when she is living with him and her brother, Christopher. Jillian is also angry and at times upset over the divorce action, and says that she loves both of her parents. Christopher is a normal happy little boy of five who loves both parents and enjoys being with either of them.
What's best for the children is determinative of custody and the court has properly considered and weighed the applicability of all statutory factors prior to deciding this case in all aspects.
Whereupon, it is adjudged that the marriage of the parties to this action be and it is hereby ordered dissolved, and they are each declared to be single and unmarried.
The court finds from all of the facts presented that it is in the best interests of these two minor children that their custody legally and physically, be in and with their father, the defendant, James R. Savage.
Their mother, the plaintiff, unquestionably loves them, and would do all that she can for them, as long as she can control her own actions. But, she has shown by her past history and lifestyle to be unable to control herself and accordingly the court believes that placing the children in her custody would be tantamount to placing them at risk, sooner or later.
Therefore, it is the order of this court that legal and physical custody of the two minor children, of this heretofore union, Jillian and Christopher, be granted to the defendant husband, and final decision making on all matters concerning their health education and welfare is to be vested in the defendant, James R. Savage. CT Page 1047
The court orders that the plaintiff be given a liberal visitation schedule which shall include, but not be limited to, separate days of visitation each week with each child, overnite visitation with both children every other weekend on a weekend, and holiday and summer vacation visitation to be as the parties may agree upon.
Neither party shall pay any alimony to the other party.
The plaintiff shall pay to the defendant the sum of one ($1.00) dollar per year as child support.
Any life insurance policies held by either plaintiff or defendant, shall name the minor children as irrevocable beneficiaries of said policies until they, said child and/or children so named, reaches the age of eighteen.
Defendant husband shall be responsible for providing health insurance for the benefit of each of the minor children until each of said children reaches the age of 18 years of age. Any unreimbursed medical and/or dental costs of the minor children shall be paid equally by the plaintiff and the defendant.
The plaintiff wife shall have sole possession and title to and of the 1983 Oldsmobile automobile, and she shall be solely responsible for any policy of automobile insurance on said vehicle, and for any and all of the costs of its repairs, maintenance and licensing, etc.
The defendant husband shall have sole possession and title to and of the 1982 Toyota automobile and is responsible for its being insured as well as for the costs of all maintenance, repairs, and licensing etc.
Under the authority of section 46b-81 of the C.G.S., the court assigns the plaintiff's interest in and to their home located at #19 Broadview Drive in Wallingford, Connecticut to the defendant James R. Savage, subject to an equitable lien in favor, of the plaintiff wife in the amount of 50% of the net value of said property upon sale. Net value shall mean the selling price less commissions, fees, conveyance costs, taxes (state, local 
possibly federal), first and/or second mortgage payoffs and any other expenses customarily associated with the conveyance of real property in New Haven County.
Defendant husband shall hold plaintiff wife harmless on the first and/or second mortgage, taxes and all other expenses associated with the operation of the household. CT Page 1048
The said family home is to be sold upon the occurrence of the earlier happening of one of the following events.
1. Both minor children reaching the age of eighteen years or dying before attaining the age of eighteen years.
2. The death of defendant husband.
3. The remarriage of defendant husband.
4. Cohabitation by the defendant husband with a female in the family home for a continuous 14 day period.
All household furnishings and effects currently in the family home, with the exception of the plaintiff wife's personal effects, shall remain in the family home.
The defendant husband shall retain ownership of all stock listed on his financial affidavit, as well as all funds on deposit in his name in any bank.
The plaintiff wife shall retain all funds on deposit in her name in any bank.
The plaintiff and defendant shall file a joint 1990 IRS return and any IRS tax refund shall be equally divided.
Each party is to retain sole ownership of their respective individual retirement account (IRA).
All debts shown on defendant husband's financial affidavit are to be fully assumed and paid for by him, holding the plaintiff wife harmless therefor. The wife is to pay all of her debts and hold defendant harmless.
Plaintiff and defendant shall each be responsible for the payment of their respective counsel fees.
Fees unpaid for Dr. Horwitz have been shown to be $900.00. The total bill of $1700.00 was reduced to this balance of $900.00 by the defendant's payment of $800.00. In view of their different financial status, the defendant is ordered to pay $600.00 and the plaintiff $300.00 of the balance of $900.00.
Counsel for the children has presented a bill for $4579.50 for services rendered. The parties are ordered to pay this bill as soon as possible with the plaintiff held responsible to pay one-third or $1,526.50, and the defendant to pay the balance of $3,053.00. CT Page 1049
WILLIAM B. RAMSEY STATE TRIAL REFEREE